FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

No. 8:17-cv-1933-T-36 TGW

MEDICAL IMAGING CORP., PARTNERS
IMAGING CENTER OF VENICE, LLC,
PARTNERS IMAGING CENTER OF
CHARLOTTE, LLC, and PARTNERS
IMAGING CENTER OF NAPLES, LLC,
                Plaintiffs,      **COMPLAINT**

- against -

PARTNERS IMAGING HOLDINGS LLC,
                Defendant.    /

      Plaintiffs Medical Imaging Corp. ("Medical Imaging"), Partners Imaging Center of Venice, LLC ("Venice"), Partners Imaging Center of Naples, LLC ("Naples"), and Partners Imaging Center of Charlotte, LLC ("Charlotte)" (collectively, the "Plaintiffs"), by and through their undersigned counsel, allege the following for their Complaint against Defendant Partners Imaging Holdings LLC ("Defendant"):

## PARTIES

      1.    Plaintiff Medical Imaging is a healthcare company focused on medical diagnostic imaging that is incorporated and headquartered in Nevada. It is the sole member of each of Plaintiffs Venice, Naples, and Charlotte.

      2.    Defendant Partners Imaging Holdings LLC is a Florida LLC. Its members, Richard M. Goldberg, M.D. and Roman Rozin, M.D., are Florida citizens.

## JURISDICTION AND VENUE

      3.    This Court has jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs, on the one hand, and Defendant, on the other, and the amount in controversy exceeds $75,000.

TPA0452715

4. Venue is proper in this Court under 28 U.S.C. § 1391.

## NATURE OF ACTION

5. Defendant sold its ownership interests in Naples, Venice, and Charlotte (each individually a "Company" and collectively the "Companies") to Medical Imaging, pursuant to a Purchase Agreement, dated August 28, 2014 (the "Purchase Agreement").

6. Defendant breached its representation and warranty in the Purchase Agreement that Medical Imaging was receiving all permits it needed to operate the business of the Companies.

7. In particular, each Company lacked the Agency for Healthcare Administration ("AHCA") license needed to operate its facility.

8. Without AHCA licensure, the Companies could not independently maintain billing arrangements with government payors (*i.e.*, Medicare or Medicaid) or private third-party payors (*i.e.*, private insurance) (together, "Payors"), forcing them to rely on Defendant to provide billing-related services to the Companies starting on November 1, 2014.

9. Defendant agreed to provide said billing-related services starting on November 1, 2014 pursuant to a Billing Agreement (defined below) in exchange for a percentage of amounts collected on the Companies' behalf, and further agreed to "work AR on a continuous basis," "diligently pursue processing for payment from ... Payors ... and ... use best efforts to submit claims within ... five business days," and "notify [Medical Imaging] as soon as practicable about any problems ... encountered ... in processing the reimbursement claim."

10. After the Companies obtained AHCA licenses on or about October 1, 2015 and made independent billing arrangements with Payors, Defendant advised Plaintiffs that $447,581 in patient billings had been "disallowed," while $710,742 had been "written off" prior to termination of the billing arrangement in August 2016. By contrast, Defendant's total

collections on the Companies' behalf during the entire term of their billing arrangement (November 2014-August 2016) was only $2.70 million. Plaintiffs have asked Defendant for information concerning these disallowed and written off amounts, but Defendant has refused to provide any backup or otherwise respond to Plaintiffs' requests.

11. By this action, among other things, Plaintiffs seek a judgment directing an accounting with respect to amounts disallowed or written off during the term of the Billing Agreement and awarding damages for breach of the same.

## BACKGROUND

### I. THE PURCHASE AND BILLING AGREEMENTS

12. Medical Imaging purchased the Companies for $1.8 million pursuant to the Purchase Agreement, subject to certain adjustments.

13. To ensure the uninterrupted continuation of services from and after November 1, 2014, Medical Imaging and Defendant entered into a Professional Services Agreement, dated October 31 but effective as of November 1, 2014 (the "Billing Agreement," attached as Exhibit 1), pursuant to which Defendant agreed to provide billing-related services to the Companies for a fixed period.

14. Pursuant to Section 1 of the Billing Agreement, Medical Imaging engaged Defendant as its exclusive provider of billing services.

15. Pursuant to Section 3, Medical Imaging agreed to provide Defendant with "billing packets" in a format set by Defendant.

16. Pursuant to Section 2, Defendant agreed to accept the billing packets, upload information therein to Defendant's radiology information system, and use that information to submit claims to and invoice Payors on behalf of the Companies. In addition, Defendant agreed to collect the resulting revenues on the Companies' behalf and pay Medical Imaging the same on

a weekly basis less fees deducted under Section 5. Defendant further agreed to "take all steps to collect monies due from payors in the shortest possible time frame and ... work AR on a continuous basis." Defendant also agreed to "provide [a] summary of any AR not collected at the end of the agreement."

17. Pursuant to Section 5, Medical Imaging agreed to pay Defendant 5% of revenues collected on behalf of the Companies for billing and collection services, which fee would be deducted from amounts paid under Section 2.

18. Section 6 provided the agreement would be for a fixed term. The parties contemplated Plaintiffs making independent billing arrangements with Payors prior to the Billing Agreement's termination.

19. During the agreement's term billing packets were submitted to Defendant in the form and manner requested by it.

## II. BILLING AGREEMENT AMENDMENTS DUE TO THE AHCA LICENSING PROCESS

20. After November 1, 2014, Medical Imaging advised Defendant that it believed it breached its obligation under Section 3.9(c) of the Purchase Agreement to disclose all permits needed to conduct the business, as the corresponding schedule disclosing said permits omitted AHCA licenses for the Companies required pursuant to Fla. Stat. § 400.991(1)(a).

21. The absence of AHCA licenses for the Companies precluded Medical Imaging from lining up independent billing arrangements for the Companies after November 1, 2014 as originally contemplated, as the Companies could not enter into billing arrangements with Payors so long as they lacked such licenses.

22. Upon discovery of the omission, Plaintiffs promptly commenced the AHCA license application process.

23. Plaintiffs, however, had no choice but to remain entirely dependent on Defendant to provide billing and collection services because of the lead time required to apply for and obtain AHCA licenses on behalf of the Companies and, on receipt of the same, enter into billing arrangements with Payors.

24. Defendant conditioned the continuation of the Billing Agreement's term on Plaintiffs' signing a Global Amendment Agreement, dated March 11, 2015 (the "Amendment," attached as Exhibit 2).

25. Section 17 of the Amendment included a release by Plaintiffs of "(i) any claim, under the [Purchase Agreement] that [Defendant] did not disclose one or more license requirements or an exemption from any license requirement for any Company," effective as of a later date (as described below), and "(ii) a claim, under the [Billing Agreement] that the services due prior to the date hereof were not timely under the terms of the agreement."[1]

26. Pursuant to Section 8, Defendant further agreed to "diligently pursue processing for payment from the Government ... and Private Payors ... and ... use best efforts to submit claims within ... five business days," and "notify the Company contact person [*i.e.*, Medical Imaging] as soon as practicable about any problems ... encountered ... in processing the reimbursement claims."

27. The Companies had not yet been awarded AHCA licenses as expiration of the Billing Agreement's term under the Amendment neared, and so entered into a Modification

---

[1] Significantly, the release under Section 17(ii) did not release Defendant from the claims herein, which are not for failure to *timely* bill or collect, but for failure to bill certain services *at all* or make any follow-up effort to collect on claims rejected in whole or in part by a Payor *at all*. Had Defendant merely billed and collected late, there would be no need to bring this action.

Agreement, dated June 1, 2015 ("Modification Agreement," attached as Exhibit 3). Section 1.A of the Modification Agreement further extended the Billing Agreement's term.

28. Pursuant to Section 1.D-E, the release in Section 17(i) of the Amendment would become effective, with respect to each Company, on the earlier of its receipt of an AHCA license or July 31, 2015. Pursuant to Section 1.F, the release in Section 17(ii) "releases all claims to date of this Modification Agreement."

29. The Companies had not yet been awarded AHCA licenses as the expiration of the Billing Agreement's term under the Modification Agreement neared, and therefore entered into a Further Modification Agreement, dated on or about August 13, 2015 ("August Modification Agreement," attached as Exhibit 4). Section 1.A of the August Modification Agreement further extended the Billing Agreement's term.

30. Pursuant to Section 1.D-E, the release in Section 17(i) of the Amendment would become effective, with respect to each Company, on the earlier of its receipt of an AHCA license or July 31, 2015. Pursuant to Section 1.F, the release in Section 17(ii) "releases all claims to date of this Modification Agreement." It further provides that "[t]o the extent the Company or a Center gives notice that it exercises the extension set forth in paragraph A, then the release in subpart (ii) releases all claims to the later of August 31, 2015 or the date of the notice."

31. The dates for the conclusion of the Billing Agreement were further extended beyond the August 31, 2015 date.

32. The Companies were awarded AHCA licenses, effective on or about October 1, 2015. Although the Companies were able to start billing certain Payors soon thereafter, they remained dependent on Defendant to bill other Payors because of the lead time required to finalize billing arrangements with them. Accordingly, the parties' billing arrangement continued

with respect to certain Payors for several additional months, with the parties' arrangement fully terminating in August 2016.

## III. BREACH OF BILLING AGREEMENT

33. At Plaintiffs' request, and in accordance with Section 2 of the Billing Agreement, following the conclusion of the Billing Agreement's term in August 2016, Defendant sent Plaintiffs a spreadsheet summary of patient billings not collected by Defendant on behalf of the Companies.

34. The spreadsheet indicated $447,581 in patient billings had been "disallowed," while $710,742 had been "written off."

35. Defendant advised Plaintiffs that the former term refers to situations where a Payor would not pay for services identified in billing packets submitted by Plaintiffs, while the later refers to situations where Defendant voluntarily wrote down bills submitted by Plaintiffs.

36. Defendant had not previously advised Plaintiffs that Defendant had disallowed $447,581 in patient billings and written off $710,742 in patient billings during the Billing Agreement's term.

37. On November 4, 2016, Plaintiffs e-mailed Defendant as follows, through counsel:

> Nigel [Defendant's COO] sent Mitch [Medical Imaging's CEO] a spreadsheet which included information regarding patients seen during the period of the ... billing agreements and billed amounts which were "disallowed" or "written off." In connection with my client's efforts to collect remaining amounts due, it is attempting to understand this chart and the reason that the insurance company did not pay the full amount of the claim, so that we can correct the situation and hopefully get paid. Attached is a group of patients from that spreadsheet regarding patient payments and benefits. My client added columns A, B & C so that your client will know which center the patient account is under, and the amount that was disallowed or written off that we are inquiring about.
>
> Please have your client review their files and send us within the next week any backup documentation that it has regarding these

7

unpaid amounts which apparently resulted in either a write off or a disallowance. My client also does not understand why some were a write off and others were disallowed. If they can explain that as well it would be helpful.

38.     To date, Defendant has not given a response to the November 4, 2016 e-mail. Plaintiffs also made follow-up inquiries that have gone unanswered.

39.     Significantly, the total amount Defendant disallowed or wrote off ($1.16 million) is nearly one-third of the Companies' total amount actually billed for the period November 2014-August 2016, as their total collections for that period was $2.70 million.

40.     Moreover, Plaintiffs performed a random audit of many of the disallowed or written off claims by contacting Payors to whom claims were submitted, but have received no substantive explanation for the denial of payment, leaving Plaintiffs totally dependent on Defendant for an explanation.

41.     All conditions precedent to this suit have been performed, satisfied, or waived.

42.     Plaintiffs have been required to hire legal counsel and have agreed to pay them costs and attorney's fees for their services rendered in this matter.

## COUNT 1
### Accounting

43.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 42 of the Complaint as if separately set forth herein.

44.     Because of Defendant's failure to convey the Companies with AHCA licenses, Plaintiffs were 100% reliant on Defendant to handle the Companies' billing and collections after November 1, 2014, during the term of their billing arrangement, and so placed their trust and confidence in Defendant to ensure the Companies were appropriately compensated by Payors for services rendered.  Plaintiffs are also entirely reliant on Defendant to understand the reason for denial of payment, by virtue of the fact that Defendant submitted claims to Payors.

45. Defendant breached duties imposed on it as a result of said relationship when it advised Plaintiffs following the conclusion of their billing arrangement that $447,581 in Company billings that had been submitted to Defendant in the form and manner requested by it had been disallowed, and $710,742 had been voluntarily written off by Defendant without Plaintiffs' prior authorization.

46. Plaintiffs have demanded an accounting, but its demand has been ignored.

47. Plaintiffs are entitled to an accounting with respect to all moneys not paid to them as a result of said disallowances or write offs.

WHEREFORE, Plaintiffs demand judgment awarding a full accounting with respect to all moneys not paid to Plaintiffs as a result of amounts disallowed by Payors or written off by Defendant, together with such other and further relief as to this Court appears just and proper.

## COUNT 2
### Breach of Contract

48. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 42 of the Complaint as if separately set forth herein.

**Written Off Patient Billings**

49. Pursuant to Sections 2-3 of the Billing Agreement, Medical Imaging agreed to provide Defendant with billing packets in a format set by Defendant, and Defendant agreed to upload the information therein to its radiology information system and use that information to submit claims to and invoice Payors on behalf of the Companies.

50. Defendant further agreed under Section 8 of the Amendment to provide that it would diligently seek to generate revenues for billed services from Payors on behalf of the Companies.

51. Defendant breached the foregoing obligations by writing off $710,742 in patient billings included in Plaintiffs' billing packets—more than 26% of the total amount Defendant actually collected on Plaintiffs' behalf during the term of their billing arrangement—without notifying Plaintiffs of said write offs, or even advising Medical Imaging of billing defects prior to writing off the same.

52. As a result of Defendant's breach, Plaintiffs are entitled to damages in the amount of $710,742.

**Disallowed Claims**

53. Defendant agreed under Section 2 of the Billing Agreement to "take all steps to collect monies due from payors in the shortest possible time frame and ... work AR on a continuous basis."

54. Defendant further agreed under Section 8 of the Amendment to provide that it would generate revenues for billed services from Payors on behalf of the Companies, and notify Medical Imaging of any Payor claim processing or other collection problems.

55. Defendant breached the foregoing obligations by failing to notify Medical Imaging that Payors rejected claims totaling $447,581 which had been included in billing packets previously submitted to Defendant, and then, following said rejection, failing to take any steps to remedy any defect with respect to the disallowed claim identified by the relevant Payor, or even advise Medical Imaging of said defect.

56. Although evidence concerning the propriety or impropriety of any particular disallowance by a Payor is in Defendant's sole control, the amount at issue is such a large percentage Defendant's total collections on patient billings on behalf of the Companies during the term of their billing arrangement that it indicates that Defendant failed to appropriately pursue the claims.

57. Plaintiffs are entitled to damages to the extent that the evidence (or accounting) establishes Defendant failed to address any remediable defect with respect to a claim previously submitted to a Payor, or failed to notify Medical Imaging of any defect with respect to a claim that Plaintiffs could have remedied.

WHEREFORE, Plaintiffs demand judgment in an amount to be proven at trial, but not less than $1,158,323, together with such other and further relief as to this Court appears just and proper.

Dated: August 14, 2017

/s/ Seth P. Robert

Seth P. Robert
Florida Bar No. 145696
Trial Counsel
BROWN ROBERT, LLP
150 North Federal Highway
Fort Lauderdale, Florida 33301
Telephone: (954) 832-9400
Facsimile: (954) 832-9430
E-mail: srobert@brownrobert.com

- and -

Jeffrey Chubak (to be admitted *pro hac vice*)
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
Telephone: (212) 497-8247
Facsimile: (212) 490-4208
E-mail: jchubak@storchamini.com

*Attorneys for Plaintiffs*