**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MEDICAL IMAGING CORP. PARTNERS IMAGING OF VENICE, LLC, PARTNERS IMAGING CENTER OF CHARLOTTE, LLC and PARTNERS IMAGING CENTER OF NAPLES, LLC.**

      **Plaintiff,**

                                                      **Case No.: 8:17-cv-1933-CEH-TGW**

**vs.**

**PARTNERS IMAGING HOLDINGS, LLC,**

      **Defendant.**

_____/

**DEFENDANT'S MOTION TO DISMISS**

Defendant, Partners Imaging Holdings, LLC, by and through its undersigned counsel, and pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and Local Rule 3.1, hereby files this Motion to Dismiss the Complaint and in support states as follows:

1. Plaintiffs have sued Defendant for an accounting (Count I) and an alleged breach of contract consisting of several documents referred to as the Billing Agreement between the parties (Count II). Essentially, Medical Imaging Corp. (MIP) purchased the other Plaintiffs from Defendant pursuant to a Purchase Agreement dated August 28, 2014 (par. 5 of the Complaint) and then entered into a Professional Services Agreement for Defendant to provide billing services to Plaintiffs (par. 9 and Exhibit 1 to the Complaint).

2. While not suing on the Purchase Agreement, it is asserted in paragraphs 6 and 7 of the Complaint that Defendant breached the Purchase Agreement. However, paragraphs 20 through 25 specifically assert that Paragraph 17 (i) of the Global

       Amendment Agreement (part of the Billing Agreement), Exhibit 2 to the Complaint, released Defendant for this alleged breach.

3. The Plaintiffs then make allegations about patient billings that were "disallowed" or "written off" prior to the termination of the billing arrangement (par. 9 and 10 of the Complaint). Paragraph 44 of the Complaint states the Defendant submitted claims to the Payors but asserts Plaintiff is reliant on Defendant to understand the reasons for the denial.

4. Paragraph 25 of the Complaint also alleges a release was given to Defendant under the "Billing Agreement" for any claim "that the services due prior to the date hereof were not timely under the terms of the agreement" per paragraph 17 (ii) of Exhibit 2 to the Complaint. Paragraph 25 then cites to footnote 1 on page 5 of the Complaint which asserts the Plaintiffs are suing Defendant for its failure to bill certain services "at all" or to make any follow-up effort to collect on claims rejected in whole or in part by a Payor "at all" to avoid the terms of the release language found in paragraph 17 (ii) of Exhibit 2.

5. The Complaint then asserts Modification Agreements were entered into between the parties that extended the time/term of the Billing Agreement, Exhibits 3 and 4 to the Complaint (see paragraphs 27 through 29). Paragraph 30 of the Complaint then recites the language of the release in the last Modification Agreement, Exhibit 4 to the Complaint, which states that paragraph 17 (ii) "releases **all claims** to date of the later of August 31, 2015 or the date of the notice."

6. The Complaint attempts to assert the Defendant improperly disallowed or wrote off claims/bills of significant amounts but also alleges Defendant submitted bills to Payors (par. 44 of the Complaint).

7. This Complaint should be dismissed because (1) all claims have been released at least to August 31, 2017, by the plain language of the documents attached to the Complaint, (2) Plaintiffs' assertions it is entitled to relief because Defendant failed to bill "at all" or follow up on bills "at all" are inconsistent with other allegations in the Complaint and the documents attached to it, and (3) the allegations in the Complaint are inconsistent with themselves as well as the documents attached to the Complaint, and the allegation that Payors disallowed or wrote off certain sums (par. 10 of the Complaint) is not a breach of any agreement attached to the Complaint.

WHEREFORE, Defendant prays this Court will dismiss the Complaint of Plaintiff.

## MEMORANDUM IN SUPPORT

**I.      Dismissal Standard**

The determination of whether the complaint states a cause of action is a question of law for the court. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997). For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). However, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**II.     Facts**

The initial document attached to the Complaint is entitled "Professional Services Agreement" (Exhibit 1) and it clearly is an agreement for Defendant to provide billing services for Plaintiffs' medical imaging business from November 1, 2014 until January 1, 2015. Attached to the Complaint as Exhibit 2 is a document entitled "Global Amendment Agreement" that amended the Profession Services Agreement and extended the time for which Defendant would provide billing services to Plaintiffs and added some additional terms, including a release for any alleged breach of the Purchase Agreement and a release for "(ii) a claim, under the Professional Services Agreement dated November 1, 2014, as amended on January 2, 2015, between MIC and PIH providing for billing and collection services, that the services due prior to the date hereof were not timely under the terms of the agreement." Attached as Exhibit 3 is a document entitled "Modification Agreement" that essentially amended the Global Amendment Agreement to extend the term for the billing services being provided by Defendant. Pursuant to paragraph 1 F of this document the release "in subpart (ii) of paragraph 17 of the Agreement (Global Amendment Agreement) releases **all claims** to date of this Modification Agreement." Attached as Exhibit 4 is the second Modification Agreement (of the Global Amendment Agreement) dated August of 2015. Pursuant to paragraph 1 F of this document the release "in subpart (ii) of paragraph 17 of the Agreement (Global Amendment Agreement) releases **all claims** to the later of August 31, 2015 or the date of the notice."

In a nutshell, Defendant's obligations under the terms of the various agreements were to provide billing and collection services i.e. submit the Plaintiffs' billings to third party Payors such as Medicare or private insurance companies (par. 8 of the Complaint) and follow up on collecting on the bills (par. 16 of the Complaint). Defendant did not and could not disallow or

write off any of Plaintiffs' bills as it was no more than a billing service under the terms of the agreements.

The Global Amendment Agreement (Exhibit 2) required the Defendant to provide Plaintiff weekly and monthly reports on accounts receivable, patient receipts reports, insurance payment reports, adjustments reports etc. See Schedule A to the Global Amendment Agreement. Plaintiff asserts in paragraphs 33 through 36 that at the conclusion of the billing arrangement, Plaintiff was notified of certain "disallowed" amounts and amounts that had been "written off". Plaintiff asserts Defendant disallowed or wrote off the amounts (par. 36). This allegation is totally inconsistent with the agreements attached to the Complaint. Defendant was a billing service for Plaintiff. Defendant did not disallow or write off anything and had no ability to do so under the agreements. The third party Payors would disallow or write off portions of the bills. Also, the Plaintiffs' assertions that they had no idea of the amount written off or disallowed is inconsistent with the weekly and monthly reports provided pursuant to Schedule A of the Global Amendment Agreement (Exhibit 2) (and Plaintiffs do not allege they were not given these reports). Plaintiffs even assert in paragraph 40 that it performed a random audit by contacting Payors to whom claims were submitted but assert they got no good explanation for the denial. It is clear that the Payors make the decision to disallow or write off bills as shown by this allegation. Furthermore, paragraph 5 of the Global Amendment Agreement gave Plaintiff the right to contact any Government Payor and non individual Payor to try and resolve any outstanding claims. Plaintiffs cannot resolve their outstanding claims with Payors by suing Defendant as Defendant does not pay the Plaintiffs' bills, it just submits them to the Payors and the Payors decide what they will or will not pay.

### III. Law and Argument

#### A. All claims through at least August 31, 2015, have been released.

Plaintiffs assert in footnote 1 on page 5 of the Complaint that its claims are for Defendant's failure to bill "at all" or make any follow up effort on rejected claims "at all". Therefore, the release language found in the Global Amendment Agreement (Exhibit 2) and two Modification Agreements (Exhibits 2 and 3) does not release its claims.  Attached to the Complaint as Exhibit 2 is a document entitled "Global Amendment Agreement" that supplemented and amended the Professional Services Agreement (Exhibit 1). It essentially extended the time for which Defendant would provide billing services to Plaintiffs and added some additional terms, including a release for any alleged breach of the Purchase Agreement and a release for "(ii) a claim, under the Professional Services Agreement dated November 1, 2014 (Exhibit 1 and 2 to the Complaint), as amended on January 2, 2015, between MIC and PIH providing for billing and collection services, that the services due prior to the date hereof were not timely under the terms of the agreement."  Attached as Exhibit 3 is a document entitled "Modification Agreement" that essentially amended the Global Amendment Agreement to extend the term for the billing services being provided by Defendant. Pursuant to paragraph 1 F of this document the release "in subpart (ii) of paragraph 17 of the Agreement (Global Amendment Agreement) releases **all claims** to date of this Modification Agreement."  Attached as Exhibit 4 is the second Modification Agreement (of the Global Amendment Agreement) dated August of 2015. Pursuant to paragraph 1 F of this document the release "in subpart (ii) of paragraph 17 of the Agreement (Global Amendment Agreement) releases **all claims** to the later of August 31, 2015 or the date of the notice."  By sending written notice, Plaintiff could extend the date for any Center by 30 days which would make the release of **all claims** effective through September 30, 2015.

It is submitted that **all claims** under the Professional Services Agreement (which includes the Global Amendment Agreement because it supplemented and amended the Professional Services Agreement) were released by this language. At most, Plaintiffs could sue the Defendant for breach of the Professional Services Agreement for its actions after August 31, 2015, or the date of the notice (which is not alleged). Instead, Plaintiffs are trying to sue for billing and collection activities going back to 2014  asserting that not "all claims" under the Professional Services Agreement were released, just claims of slow billing or slow follow up on rejected claims (see footnote 1 on page 5 of the Complaint). This assertion is incorrect and the Complaint should be dismissed to the extent it seeks any redress before August 31, 2015, or any extension under the Modification Agreement, Exhibit 4.

Where language in a release is clear and unambiguous, the courts cannot indulge in the construction or interpretation of its meaning or entertain evidence contrary to its plain meeting. *Hernandez v Gill*, 958 So. 2d 390 (Fla. 3d DCA 2007); *Steffen v Gray, Harris & Robinson P.A.*, 283 F. Supp. 2d 1272 (M.D. Fla. 2003), aff'd 138 Fed. Appx. 297 (11th Cir. 2005).  Exhibit 4 to the Complaint clearly releases "all claims" under the Professional Services Agreement as amended through August 31, 2015, or later if an extension was requested.

**B.  Limited release and claims for not billing "at all" or following up "at all".**

Plaintiffs have stated in footnote 1 on page 5 of the Complaint that they can only sue Defendant for not billing certain services "at all" or making any follow up effort to collect on rejected claims by a Payor "at all".  This is an attempt to avoid the release language found in the agreements attached to the Complaint and the arguments found above. Assuming Plaintiff could avoid the release of all claims as stated in part A above by claiming it is only suing Defendant for not billing "at all" or following up on rejected claims "at all", the Complaint fails to state a

cause of action because other allegations in the Complaint and the documents attached to the Complaint negate the statement in footnote 1.

Rule 10 (c), Fed. R. Civ. P. makes a written instrument that is an exhibit to a pleading part of the pleading for all purposes. If the document attached to a pleading negates the pleader's cause of action, the plain language of the document will control and may be the basis for a motion to dismiss. *Florida Farm Bureau General Insurance Company v Insurance Company of North America*, 763 So. 2d 429 (Fla. 5th DCA 2000).

With respect to any contention that Defendant failed to follow up "at all" on rejected claims, the allegations on this issue are inconsistent. In paragraph 55 of the Complaint the Plaintiff asserts no steps were taken to rectify claims of $447,581 in rejected claims by Payors. The allegations then continue and are that, when the billing arrangement ended, the Plaintiffs were given a spreadsheet on the amount of billings disallowed or written off (par. 33 through 36 and 51 and 55 through 56) and this spreadsheet indicates Defendant failed to "appropriately pursue the claims" (par. 56). This is not an allegation that the Defendant failed to pursue the claims "at all" (which is Plaintiffs claim to get around the releases i.e. see footnote 1 on page 5 of the Complaint). These inconsistencies require dismissal of the Complaint concerning the failure to follow up "at all" on rejected claims.

With respect to any contention the Defendant failed to bill "at all", other allegations in the Complaint negate this contention. Paragraph 40 alleges Plaintiff contacted Payors to try and determine why bills were disallowed or written off. Obviously, the bills had to be submitted to the Payors for the Payors to disallow portions or write off portions of the bills. Paragraph 44 alleges the Plaintiffs were reliant on Defendant to "understand the reasons for denial of payment, by virtue of the fact that Defendant submitted claims to Payors." If Defendant submitted claims

to Payors, it could not have failed to bill services "at all" as alleged in footnote 1 on page 5 of the Complaint. Paragraph 55 alleges Payors rejected claims totaling $447,581. Again, the bills had to be submitted to the Payors for the Payors to reject them. Paragraph 56 alleges "the propriety or impropriety of any particular disallowance by a Payor is in Defendant's sole control". The bill had to be submitted to the Payor before the Payor could appropriately or inappropriately disallow all or part of the bill.

The very allegation that $447,581 was rejected by Payors (par. 55) and that $710,742 in patient billings were written off (par. 51) negate the claim Defendant failed to bill certain services "at all". The agreements attached to the Complaint do not make Defendant responsible to pay the billings, only to submit them to the Payors and follow up on the bills. Logically, only the Payors can write off or reject the bills. For the Payors to reject or write off the bills, the bills must have been sent. As a result, any claims the Defendant failed to bill certain services "at all" are inconsistent with the allegations and agreements attached to the Complaint.

In short, the allegations seem to be that bills were submitted to Payors and some were written off or disallowed. A bill might be disallowed by a Payor for several reasons. For example, a failure to get pre-approval for an MRI might result in a disallowance of the claim. A bill may be written off by a Payor because its contract requires it to pay only a set amount and the bill is higher than the set amount. It is clear from the agreements attached to the Complaint that these are not determinations made by Defendant, the billing service. Plaintiffs Complaint appears to be an in-artful attempt to try and collect its uncollectable accounts receivable from the billing entity, not the party or parties responsible for the bill.

**C. The allegations in the Complaint are inconsistent with each other and the documents attached to the Complaint.**

As stated above, Rule 10 (c), Fed. R. Civ. P. makes a written instrument that is an exhibit to a pleading part of the pleading for all purposes. If the documents attached to a pleading negate the pleader's cause of action, the plain language of the document will control and may be the basis for a motion to dismiss. *Florida Farm Bureau General Insurance Company v Insurance Company of North America*, 763 So. 2d 429 (Fla. 5th DCA 2000).

In a nutshell, Defendant's obligations under the terms of the various agreements were to provide billing and collection services i.e. submit the Plaintiffs' billings to third party Payors such as Medicare or private insurance companies (par. 8 of the Complaint) and follow up on collecting on the bills (par. 16 of the Complaint). Defendant did not and could not disallow or write off any of Plaintiffs' bills as it was no more than a billing service under the terms of the agreements. This is extremely clear under the terms of the agreements attached to the Complaint.

In Count I of the Complaint the Plaintiffs seek an accounting from Defendant. Plaintiffs allege in paragraph 44 that they are "entirely reliant on Defendant to understand the reason for denial of payment, **by virtue of the fact that Defendant submitted claims to Payors**." Plaintiff then asserts the Defendant breached the billing arrangement by notifying them of the disallowed amounts and written off amounts and assert Defendant wrote off or disallowed the amounts (par 45). These allegations are inconsistent. If Defendant submitted the claims to Payors, it would be the Payors that disallowed or wrote off part of the bills. Furthermore, the allegations are totally inconsistent with the obligations under the agreements attached to the Complaint. Plaintiffs essentially assert they got a report on billings and collections but want the Defendant to explain why the Payors wrote off amounts or disallowed amounts. Why amounts are disallowed or written off are clearly decisions made by the Payors, not Defendant. As a result, the allegation that Defendant wrote off or disallowed amounts is clearly inconsistent with some of the

allegations and the agreements attached to the Complaint and the Complaint should be dismissed.

Count II of the Complaint attempts to assert a cause of action for breach of contract. Paragraph 51 asserts a breach of the Billing Agreement by Defendant writing off $710,742 in patient billings. This allegation is inconsistent with the document attached to the Complaint and the allegations that Defendant billed the Payors. Only the Payors could write off or disallow some of the billings to them.

Furthermore, Payors writing off or disallowing some portion of the billings is not a breach of the agreements attached to the Complaint. The Billing Agreements just required Defendant to bill and try to collect monies from the Payors. It simply is not a breach of the agreements attached to the Complaint if the Payors do not pay all of the Plaintiffs' bills (which is very normal in medical billings).

Plaintiffs also assert a breach of contract because Payors rejected claims totaling $447,581 (par. 55). The allegation the Payors rejected claims is not a breach by Defendant of any obligation under the agreements attached to the Complaint. The Plaintiffs may have issues with the Payors not paying them but that is not a breach of the Billing Agreements by Defendant.

Plaintiffs assert no steps were taken to collect these amounts and that Defendant never even advised Plaintiffs of the billings and collections (par. 55). Plaintiffs then assert the propriety or impropriety of any particular disallowance by a Payor is in Defendant's sole control so the amount rejected must be because Defendant failed to "appropriately pursue the claims".

These allegations are inconsistent with the agreements attached to the Complaint. Schedule A of the Global Amendment Agreement (Exhibit 2) required Defendant to provide weekly and monthly reports on billings and collections to Plaintiffs. Paragraph 5 of the Global

Amendment Agreement allowed the Plaintiffs to contact the Payors to resolve any outstanding claims. Plaintiffs allege they did contact Payors about outstanding claims (par. 40). How can Plaintiffs assert they were never advised of disallowed or rejected claims if the very agreements that are the basis of the suit require weekly and monthly reports on the billings and collections? The allegation that the disallowance by a Payor is in Defendant's sole control is ludicrous. Defendant submits the bill to the Payor and the Payor has sole control over what it pays, not Defendant, and Plaintiff can contact the Payor to resolve outstanding claims pursuant to paragraph 5 of the Global Amendment Agreement, Exhibit 2 to the Complaint.

## IV.   Conclusion

For the reasons set forth above the Defendant respectfully requests the Court dismiss the Complaint of Plaintiff.

Respectfully submitted,

James H. Burgess, Jr., Esq.
Florida Bar No. 0280763
Attorney for Defendant Rusty Ayers
1776 Ringling Boulevard
Sarasota, FL 34236
Telephone: 941-366-3700
Facsimile:  941-366-0189
Email: jburgess@burgessharrell.com


BY:   s/James H. Burgess, Jr.
         James H. Burgess, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of September 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to

> Seth P. Robert, Esquire
> Florida Bar No. 145696
> Brown Robert, LLP
> 150 North Federal Highway
> Fort Lauderdale, FL 33301
> Telephone: 954-832-9400
> Facsimile: 954-832-9430
> Attorney for Plaintiff
> Email: srobert@brownrobert.com

> Jeffrey Chubak, Esquire
> (admitted *pro hac vice*)
> STORCH AMINI PC
> 140 East 45th Street, 25th Floor
> New York, NY 10017 10017
> Telephone: (212) 497-8247
> Facsimile: (212) 490-4208
> Email: jchubak@storchamini.com

By: ___s/James H. Burgess, Jr.___
     James H. Burgess, Jr.
     Florida Bar No. 0280763